UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARNESS, DICKEY & PIERCE,
P.L.C.,

          Plaintiff,

v.

EDWARD A. ANDREWS,

          Defendant.

_____/

CIVIL ACTION NO. 03-40334

DISTRICT JUDGE PAUL V. GADOLA

MAGISTRATE JUDGE DONALD A. SCHEER

**REPORT AND RECOMMENDATION**

**I.**   **RECOMMENDATION**:

I recommend that Plaintiff's Motion for Summary Judgment be granted on Count III of the Amended Counterclaim, and that the Motion be denied in all other respects.

**II.**   **REPORT**:

    **A.**   **Procedural History**

Plaintiff's Complaint was filed on December 23, 2003 (Docket Entry #1). Defendant filed his Answer and Counterclaim on February 27, 2004 (Docket Entries #3-#5). Plaintiff filed an Answer to Defendant's Counterclaim on April 27, 2004 (Docket Entry #8).

Defendant amended his Counterclaim on November 1, 2004 (Docket Entry #21). Plaintiff asserted affirmative defenses to the Amended Counterclaim on November 22, 2004, and an Answer to the Amended Counterclaim on the following day (Docket Entries #23, #26). On July 13, 2005, the parties filed a Stipulation of Dismissal of Count I of the Amended Counterclaim (Docket Entry #38), and the Court entered a Stipulated Order of Dismissal as to that Count on July 15, 2005 (Docket Entry #39).

On August 1, 2005, Defendant filed a Motion to Further Amend his Counterclaim (Docket Entry #42).  Plaintiff filed a Response on August 12, 2005 (Docket Entry #47), and Defendant amended the motion on August 17, 2005 (Docket Entry #48).  Plaintiff filed a Response to the Amended Motion on August 25, 2005 (Docket Entry #51), and Defendant filed a Reply on September 2, 2005 (Docket Entry #53).  Defendant's Motion was referred to the magistrate judge.  Following a hearing on September 8, 2005, the Motion to Amend the Counterclaim was denied (Docket Entry #54).

The parties engaged in a contentious period of discovery.  On October 31, 2005, Plaintiff filed a Motion for Summary Judgment (Docket Entry #81) supported by the Affidavit of Garrett C. Donley (Docket Entry #82).  Plaintiff filed his Response on December 9, 2005 (Docket Entry #97), and Plaintiff filed a Reply on December 22, 2005 (Docket Entry #100).  Plaintiff filed a Supplemental Brief on December 30, 2005 (Docket Entry #104) and again on January 11, 2006 (Docket Entry #108).  Defendant filed a Supplemental Affidavit in support of his Response to the Motion for Summary Judgment on January 18, 2006 (Docket Entry #112).  The Motion for Summary Judgment was referred to the magistrate judge in an Order of Reference on January 25, 2006 (Docket Entry #113).

On Plaintiff's Motion, Defendant's Supplemental Affidavit was stricken on March 15, 2006.  On the same date, the Plaintiff's Motion for Summary Judgment was brought on for hearing.

## B.   <u>Applicable Law and Standard of Review</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial.  Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986); Martin v. Ohio Turnpike Comm'n, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party.  60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987).  The court is not required or permitted, however, to judge the evidence or make findings of fact.  Id. at 1435-36.  The moving party has the burden of showing conclusively that no genuine issue of material fact exists.  Id. At 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties.  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate.  Id.; Feliciano v. City of Cleveland, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial.  Anderson, 477 U.S.

3

at 256.  To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted); <u>see</u> <u>Celotex</u>, 477 U.S. at 322-23; <u>Matsushita</u>, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury.  <u>Lucas v. Leaseway Multi Transp. Serv., Inc.</u>, 738 F.Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), <u>aff'd</u> 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find the plaintiff." <u>Anderson</u>, 477 U.S. at 252; <u>see</u> <u>Cox v. Ky. Dep't of Transp.</u>, 53 F.3d 146, 150 (6th Cir. 1995).

###    C.    **Factual Background**

Plaintiff, Harness, Dickey & Pierce, P.L.C. ("Harness Dickey"), is a law firm specializing in the practice of intellectual property law.  Its principal offices are located in Troy, Michigan.  Defendant, Edward A. Andrews ("Andrews"), is a former client of the Plaintiff, who resides in California and maintains an address in Troy, Michigan.  Defendant engaged the Plaintiff in 1988 to provide legal work in connection with applications for patent protections for several inventions.  During the course of that attorney/client relationship,

4

various members of the Plaintiff law firm rendered services to Defendant, including the preparation and prosecution of patent applications, processing of all maintenance and other fees, docketing of filing and fee deadlines, and other services relating to the patent process (Donley Affidavit, ¶ 6).  Ultimately, Defendant's portfolio consisted of two machine tool component patents issued between 1988 and 1990 and eighteen patents covering shaving related products, including seven basic device classes or "architectures" (razors for underarm, mustache, ears/nose, face, and body shaving) and eleven additional innovations complementing those devices, all of which were issued between 1993 and 2000 (Andrews Deposition, pages 12-25).  Plaintiff also rendered services in connection with international applications for Defendant's inventions under the Patent Cooperation Treaty ("PCT").  Much of the international work was handled through Plaintiff's foreign "associates" or "affiliates" (patent attorneys or agents in other countries with whom Harness Dickey contracted to secure such services).  Those firms billed their services relating to Defendant's inventions to Plaintiff, which paid for those services upon receipt of each invoice.  Plaintiff then included the charges of their foreign associate firms in its invoices to Defendant, thus effectively extending credit to the client.  At all times, however, the foreign firms looked to Plaintiff for the payment of their fees (Donley Affidavit, ¶ 7-8).

Initially, Plaintiff's work on Defendant's behalf was performed by Bernard Cantor, a former Harness Dickey principal who currently holds "of counsel" status with the firm (Donley Affidavit, ¶ 11).  In approximately 1995 or 1996, as Mr. Cantor became more heavily involved in patent litigation matters, he turned over the responsibility for Defendant's portfolio and projects to Robert Nolan.  Nolan's interests extended to the entire process of bringing products to market, rather than just the prosecution of patent applications

5

(Andrews Deposition, pages 40-41).  Defendant appreciated Nolan's enthusiasm for his inventions and patent work.  Andrews testified that Nolan was "doing his own inventing" with some of his products, and that "[s]ome of the embodiments  and things that he did in [Defendant's] work were his own ideas."  Andrews further testified that he gave Nolan a free hand, even as to matters which Defendant felt were unnecessary, in order to keep Nolan interested and active in the pursuit of Defendant's interests.  Although he felt that Nolan was unnecessarily aggressive and thorough in preparing multiple embodiments and implementing patent protection strategies, to the extent of 20% of the time expended on Defendant's portfolio, Andrews "just sort of let [Nolan] go with it because it sort of motivated him (Andrews Deposition, pages 57, 102-04, 145-46)."

At various times, Nolan employed Harness Dickey associates, including Garrett Donley, to perform work on Defendant's portfolio.  While he claims that the use of associates was inefficient and ultimately increased his legal fees, Andrews never objected to the use of associates on his projects, or to the time expended by them in that work, because he did not wish to disrupt Nolan's overall productivity (Andrews Deposition, pages 151-56, 175-78).

On or about May 31, 2001, Nolan left the Harness Dickey firm (Donley Affidavit, ¶ 13).  At that point, Garrett Donley assumed responsibility for legal work on the Defendant's portfolio.[1]  Defendant contends that Donley's work was less efficient than Nolan's, due to his inexperience.  Nolan continued to represent Defendant after his departure from the Plaintiff law firm.  Defendant did not complain to Donley or anyone else at Harness Dickey

---

[1]  Mr. Nolan died on June 14, 2004, after the filing of this lawsuit but before his deposition could be taken (Donley Affidavit, ¶ 10).

6

about the firm's charges, and he continued working with Donley until the termination of the attorney/client relationship in August 2003.  He intentionally refrained from raising the efficiency issue so as not to interfere with the progress of the legal work (Andrews Deposition, pages 175-78).

Prior to Nolan's departure from the Plaintiff firm, Defendant's unpaid account balance was approximately $200,000.00 (Donley Affidavit, ¶ 13).  Nolan presented Defendant with a proposed agreement in writing providing for the payment by Defendant of three $25,000.00 payments against the balance due on his account, to be followed by monthly payments of $25,000.00 to continue until the balance was paid.  The written agreement did not reflect the total amount due on the account.  Andrews did not contest the Plaintiff's calculation of the amount owed, and he signed the Agreement in order to induce Harness Dickey to continue its representation (Andrews Deposition, pages 188-89).  Nonetheless, only the first $25,000.00 payment was made.  Defendant's unstated intent at the time he signed the document was to make no other payments (Andrews Deposition, pages 197-98).  On August 16, 2002, Plaintiff wrote to Defendant concerning his breach of the payment arrangement (Exhibit 3 to Plaintiff's Motion).  Defendant received the letter, and again failed to dispute the amount claimed to be owed, so as to minimize the risk of a termination of the attorney/client relationship (Andrews Deposition, page 202).

On October 10, 2002, Harness Dickey again wrote Andrews concerning his breach of payment agreement (Exhibit 4 to Plaintiff's Motion).  The letter explained that Harness Dickey's only choice would be to suspend all work on Andrews' legal matters unless a substantial payment was in excess of $50,000.00 made towards invoices for services rendered between January and July of that year.  Andrews acknowledges receipt of the

7

letter, and his own failure to dispute the amount claimed to be owed or otherwise complain about the letter.

> "Well, why would I want to call them and dispute the amount and maybe end up getting a termination of some disagreement where we couldn't work together?  By me not disputing the amounts that - I always thought the billing was high.  I just didn't want to bring it to a head.

(Andrews Dep., p. 204).

On August 13, 2003, Harness Dickey notified Andrews in writing of its decision to terminate its services to him (Exhibit 5 to Plaintiff's Motion).  The termination letter advised Defendant of the status of all pending matters (enclosing a document reflecting all activities due in Defendant's portfolio during the following three months), and requested that Andrews advise the firm as to where he wanted his files to be sent.  The communication further explained that Harness Dickey would be advising "the US Patent and Trademark Office and the various foreign associate firms" handling Andrews' matters, in writing, of its withdrawal from his representation.  The letter was sent to Defendant's Michigan address.  Subsequently, Plaintiff notified its foreign associate firms of its action, instructing them not to perform further work or incur further charges on any of Defendant's files, and to allow all pending applications or patents to lapse.  Defendant was a copy addressee of each letter (Exhibit 6 to Plaintiff's Motion), although he denies receipt of them until approximately three months following the termination (Andrews Deposition, pages 219-20).  It is undisputed that Robert Nolan was actively representing Andrews at that time, monitoring his portfolio and advising Defendant as to various maintenance fees coming due (Andrews Deposition, pages 211-12, 219-20).   Andrews made payments on certain foreign patents for approximately 30 months, and then voluntarily allowed them to lapse.   Other foreign

8

matters lapsed in default of payments following Harness Dickey's notices to their correspondent firms. Andrews made no inquiry as to what he might have done to save those portions of his portfolio (Andrews Deposition, pages 219-230).

Robert Nolan is now deceased. Andrews' deposition testimony includes criticism of Nolan's billing practices during his employment with Plaintiff. Specifically, Defendant complains of (a) the lack of detailed, "tenth-of-an-hour" time entries and (b) the fact that bills were sent out every six to eight months, as opposed to monthly (Andrews Deposition, pages 109-11, 179-80). Defendant, however, did not contemporaneously object to either practice, because he wanted to avoid interference with the performance of the legal work (Andrews Deposition, page 181). He also remained silent in anticipation of substantial profits from his inventions (Andrews Deposition, page 111). Nonetheless, Andrews now characterizes Nolan's bills as extremely high and possibly "made up" (Andrews Deposition, pages 179-80).

**D.    Analysis**

Plaintiff's Complaint asserts five separate theories of recovery: 1) breach of contract (for services rendered over the entire attorney/client relationship); 2) breach of 2/28/01 contract (based upon Defendant's signed memorandum bearing that date); 3) account stated; 4) quantum meruit; and 5) unjust enrichment. Attached to the Complaint is an "Accounts Receivable Statement," dated December 12, 2003, listing 186 invoices issued to Defendant between November 30, 1999 and December 8, 2003, reflecting Plaintiff's charges for work and costs expended on Andrews' various projects, as well as payments received during the same period. The statement reflects a total balance due of

9

$213,716.41.[2]  Plaintiff's Motion for Summary Judgment addresses only the first three of the five claims asserted in the Complaint.

### 1.   Breach of Contract

The existence of an attorney/client relationship between Harness Dickey and Andrews is not only admitted in the pleadings (Answer, ¶¶ 7-9), it is abundantly established by the deposition testimony of the Defendant.  The employment of an attorney is sufficiently established when it is shown that the advice and assistance of the attorney are sought and received in matters pertinent to his profession.  In such circumstances, the contract is implied by the conduct of the parties.  Macomb County Taxpayers Ass'n. v. L'Anse Creuse Public Schools, 455 Mich. 1, 11 (1997).  The principle applies equally well to the relationship between a client and a law firm.  Eggleston v. Boardman, 37 Mich. 14 (1877).  The evidence in this case establishes beyond serious dispute that Harness Dickey rendered, and Defendant accepted, the benefit of specialized professional services over an extended period of years, including the times specifically addressed in the pleadings.  "Lawyers are entitled to compensation for services rendered to their clients, and, in the absence of an express agreement as to the amount of the compensation, they are entitled to reasonable remuneration."  Id., at 12.

---

[2]  Also attached to the Complaint is the copy of the February 28, 2001 memo signed by Plaintiff and addressing the status of his account, and an "Affidavit of Account Stated" signed by Garrett C. Donley, an attorney employed by Plaintiff, asserting that the invoices listed in the Exhibit to the Complaint were "remitted to Mr. Andrews," and claiming a balance due in the amount of $213,917.54 "over and above all legal counterclaims and set offs, which amount represents the unpaid account invoiced to Edward Andrews."

Attached to Plaintiff's Complaint as Exhibit C is the Affidavit of Garrett C. Donley, one of the attorneys actively engaged in rendering services to the Defendant.  Donley's "Affidavit of Account Stated" avers that Harness Dickey rendered services to Andrews from approximately 1988 to August of 2003 "on open account, as reflected in subsequent invoices remitted to Mr. Andrews and to which he did not object" (Exhibit C to Complaint). The Affidavit further declares that Exhibit A to the Complaint is "(a) true, complete and accurate copy of the outstanding account" with Defendant.  Exhibit A lists 186 invoices issued to Andrews from November 30, 1999 through December 8, 2003 for services rendered and/or costs advanced in connection with his various projects.  It reflects a balance due on December 12, 2003 of $213,716.41.  That balance is denied in paragraph 11 of the Answer.  The testimony of Mr. Andrews, however, acknowledges his receipt, from time to time, of invoices from Plaintiff for services and costs advanced on his behalf. Andrews' testimony confirms not only his receipt of Plaintiff's invoices, but also his failure to object to the amounts charged, and his payments to Harness Dickey of various sums from time to time on his account.  Andrews further admitted in his deposition that he purposely raised no complaint or challenge to the Plaintiff's invoices so as to avoid interruption or suspension of Harness Dickey's services on his behalf.  Indeed, the evidence confirms that no significant complaint or criticism directed to Harness Dickey's performance or billings was raised by Andrews at any time before the filing of Harness Dickey's Complaint in this case.

Although the existence of an attorney-client relationship is well established, Harness Dickey bears the burden of establishing the value of the services and advances for which it seeks a judgment in this case.  Summary Judgment for the amount claimed in the

11

Complaint is appropriate only if Harness Dickey can establish the absence of any material question of fact on that issue. In my view, Plaintiff has failed to meet that standard.

Harness Dickey argues that it is entitled to recover for breach of contract if it establishes (1) that it entered into a contract with Andrews; (2) the terms of that contract; (3) that Andrews breached the contract; and (4) that the breach caused injury to Harness Dickey. (Plaintiff's Brief, pages 13-14) (citing Webster v. Jones and Co., 197 F.3d 815, 819 (6th Cir. 1999). As to the common law breach of contract claim in Count I of its Complaint, Plaintiff correctly considers it "undisputed" that: a) Andrews engaged the firm for legal services; b) Harness Dickey rendered legal services; c) Andrews never objected to the fees, and paid on the invoices for years without objection to the quality of the work performed; and d) Andrews stopped paying despite Harness Dickey continuing to provide legal services. On that basis, Plaintiff maintains that it is entitled to summary judgment on its contract claim, "including the amount of damages, as a matter of law." (Plaintiff's Brief, page 15). Unfortunately, the only measure of valuation offered by Plaintiff in support of its claim for contract damages is the Affidavit of Mr. Donley and the attached list of invoices which he claims were "remitted" to Mr. Andrews.

As Exhibit 2 to his Response to Plaintiff's Motion for Summary Judgment, Defendant Andrews submitted his own Affidavit. The Affidavit states that there was never an express agreement as to the amount of Plaintiff's fees, and that he never agreed to pay Plaintiff a specific sum of money claimed to be due by reason of the attorney/client relationship. (Defendant's Exhibit 2).[3] In his deposition testimony, Andrews stated that Plaintiff's billing

---

[3] A second copy of the same Affidavit is attached as Exhibit 5 to Defendant's Response to Plaintiff's Motion for Summary Judgment.

invoices were so general that the fees demanded could not be correlated with the time devoted by Harness Dickey to his projects.   (Andrews Deposition, pages 180-81). Defendant testified that he once received, in error, a billing by Plaintiff to another client, which reflected time expenditures by Plaintiff in tenths of an hour.   Andrews claimed to have questioned Mr. Nolan as to why he did not employ the same system on the Andrews account, but admits that he did not press the issue.  (Andrews Deposition, pages 180-82). Attached as Exhibit 14 to Defendant's Response to the Motion for Summary Judgment are copies of Plaintiff's invoices, numbered 406271 through 406273 and 422508.   Those billings are consistent with Defendant's testimony, in that they contain no indication of the attorney time expended in arriving at the amount billed for professional services.   In addition, the invoices contain no statement of the total balance due from Defendant to Harness Dickey on account number 5391.  That fact appears to support a declaration by Andrews in his Supplemental Affidavit that "[t]he only invoice Defendant received covering all of his outstanding fees and charges allegedly incurred by Harness Dickey was dated December 10, 2003." (Supplemental Affidavit of Edward A. Andrews in support of Answer to Motion for Summary Judgment, ¶ 2).  The Supplemental Affidavit further declares that the reasonable value of Plaintiff's services to Defendant is $645,000.00, which sum has been paid. Id., at Paragraph 3.

Harness Dickey has produced no evidence of an agreement with Andrews as to the manner in which its fees would be calculated.  Andrews has submitted sworn statements denying the existence of such an agreement.   The Michigan Supreme Court has determined that the proper charge for legal services, where no agreement was made in advance or during the course of representation, "largely becomes a question of fact to be

13

determined by the jury or by the trial judge sitting without a jury." Baker v. Hall-Dodds Co., 282 Mich. 463, 469 (1937). The amount of time consumed is one of many factors to be taken into consideration. Those include the professional standing and reputation of the attorney, the difficulty and importance of the matter on which the services were rendered, the result obtained, and the usual prices charged for similar services. See Eggleston v. Boardman, 37 Mich. 14 (1877), Baxter v. Szucs, 248 Mich. 672 (1929). In Baxter, the plaintiff's attorney supported a motion for summary judgment by his own affidavit which claimed that the reasonable value of his services was $3,000.00. The defendant, a layman, responded with an affidavit asserting that he had paid the plaintiff $470.00, "which reasonably if not overpaid plaintiff for the necessary work . . .." The trial court ruled that a layman was not a competent witness to testify as to the value of an attorney's services, and entered a summary judgment in favor of the plaintiff for $2,530.00. The Supreme Court reversed the judgment, in part, upon its determination that the defendant's affidavit was not insufficient, since no one can state as a fact the value of extensive legal services. One can only render an opinion. In the case at bar, Plaintiff rests its claim for contract damages upon the affidavit of Garrett C. Donley regarding the total sum of the invoices submitted to the Defendant. The record contains no evidence as to the time expended on Mr. Andrew's accounts, the customary amount charged by attorneys for the services rendered, or several of the other factors deemed relevant in determining the value of legal services. In Eggleston v. Boardman, the Michigan Supreme Court observed that a note of an attorney's services in his register or some proper memorandum book is sufficient to establish an account with the client, even though the amount of the charge is not stated. The notes following the opinion observe, however, that "[an attorney's] bill for his services is no

14

evidence of their value . . .." (Citing Gartner v. Beller, 54 Mich. 333 (1884). That proposition seems self evident, since a number on a billing statement, unsupported by information to explain how it was derived, cannot be assessed for reasonableness. In the present case, the list of the various billings sent to Defendant is the only basis for the amount claimed by Plaintiff to be due. I am thus constrained to find that questions of material fact remain undetermined on Plaintiff's common law contract claim.

In a footnote to its contract arguments, Plaintiff asserts that, if "the Court finds that the facts do not support a contract as alleged in Count I, then Harness Dickey is entitled to summary judgment on its alternative counts for Quantum Meruit and Unjust Enrichment . . .." (Plaintiff's Brief, page 15, n.8). Each of those theories, however, conditions a grant of relief upon evidence establishing the fair value of the services rendered to Defendant. Johnson v. Jones, 921 F.Supp. 1573, 1586 (E.D. Mich 1996) aff'd in part and rev'd in part, remanded, 149 F.3d 494 (6th Cir. 1998) ("In such cases, the law implies an understanding or intent to pay the value of the services rendered.") Plaintiff's reliance upon a list of invoices simply fails to satisfy its burden of proof on that issue. The list does not inform the Court as to the amount of time expended on Andrews' behalf, the difficulty and importance of the matters addressed, the results obtained or the usual prices charged in similar services. Yet those considerations are material elements in a proper evaluation. See Eggleston v. Boardman, 37 Mich. 14 (1877); Baxter v. Szucs, 248 Mich. 672 (1929). Further, such matters are questions of fact. Baker v. Hall-Dodds Co., 282 Mich. 463, 469 (1937). On the record presented here, there are material questions of fact which remain unresolved, and summary judgment for the amount prayed in the Complaint is inappropriate.

15

2. **February 28, 2001 Contract**

Count 2 of the Complaint asserts a separate contract claim based upon the written "memo" dated February 28, 2001 and signed by Andrews. The reference line of the memo contains the words "plan for payments on my account (5391) with Harness, Dickey & Pierce, P.L.C." (Exhibit B to Complaint). The body of the document lists February 28, 2001, March 31, 2001 and April 30, 2001 as approximate dates for $25,000.00 payments, the first and third of which would be "on the account" and the second to be "payment(s) for planned national phase and European phase filings" relating to a foreign patent application. The memo further provides for continued monthly payments of $25,000.00 "until my account with the firm is paid up and I am current." In addition, there is a provision for advanced payment of attorney and administrative fees on other patent applications "so as not to increase the total amount due on my account with Harness Dickey."

Plaintiff maintains that the February 28, 2001 memo constitutes a separate contract under which Harness Dickey agreed to continue rendering services to Andrews in exchange for his promised payments. Andrews counters that the memo is simply a plan drafted by a Harness Dickey attorney, Robert Nolan, and "identified by him as a plan of payment on an unidentified sum of money . . .." (Defendant's Brief, page 12).

The essential elements of a contract are: parties competent to contract; a proper subject matter; legal consideration; mutuality of agreement; and mutuality of obligation. Johnson v. Douglas, 281 Mich. 247 (1937). There is no evidence in this record as to who the draftsman of the February 28, 2001 memo was. It is clear, however, that the document does not state the amount of Andrews' account balance. Defendant denies that he agreed to a specific figure, and denies as well that he was ever given an account balance prior to

16

the December 12, 2003 accounts receivable statement.  The examples of Plaintiff's billing invoices which Andrews attached to his Response to the Motion for Summary Judgment support the accuracy of that statement.  The document does not state an amount, or method of calculation, by which the fees to be paid in advance for future services can be ascertained.  In the absence of a means by which to calculate Andrews' indebtedness, Plaintiff is unable to establish its claim.  Harness Dickey relies, once again, upon the Donley Affidavit and the December 12, 2003 accounts receivable statement in an effort to fix the amount of Andrews' obligation.  As stated above, however, a lawyer's billing is not evidence of the reasonable value of his services.  Eggleston v. Boardman, 37 Mich. 14 (1877); Gartner v. Beller, 54 Mich. 333 (1884).

To be enforced as a contract, the terms of an alleged agreement must be stated, or at least capable of ascertainment.  Linnen v. Ken Brown Leasing Corp., 5 Mich. App. 394 (1966).  Plaintiff seeks a judgment in the amount of $213,716.41 based upon the February 28, 2001 memo, despite the fact that no statement of Andrews' account balance on that date is contained in it.[4]  Furthermore, the memo contains no agreement as to the method of calculating the fees for services rendered after the date of the document.  The memo appears to condition payment for future services upon advance notice by Plaintiff.  There is no evidence in the record as to whether Harness Dickey accepted that condition, or whether its subsequent dealings with Andrews complied with it.  Finally, although Harness Dickey acknowledged receipt of Defendant's $25,000.00 check along with the alleged

---

[4]  The December 12, 2003 accounts receivable statement attached to the Complaint reflects a balance of $116,527.92 through invoice number 406273, dated January 19, 2001.  No statement of account balance, however, is shown in the actual invoice, a copy of which is attached as Exhibit 14 to Defendant's Response Brief.

17

contract, there is no indication in the accounts receivable statement that Andrews was ever credited with that payment. Plaintiff's Motion for Summary Judgment simply fails to establish the absence of material questions of fact. It does not establish the amount of the unpaid balance which Andrews allegedly agreed to pay. Nor does it establish the reasonable value of services rendered by Plaintiff to the Defendant thereafter. Plaintiff does not explain why Andrews' February 28, 2001 payment of $25,000.00 is not reflected in the balance claimed to be due. I am satisfied that material questions of fact exist as to whether the memorandum is a binding and enforceable contract.

### 3.    Account Stated

The final theory upon which Plaintiff relies in seeking summary judgment is that the $213,716.41 account balance reflected in its December 12, 2003 accounts receivable statement constitutes an "account stated." Unfortunately, as with its other contract theories of recovery, Harness Dickey merely asserts that there is "no question" that an account stated was struck between the parties. No detailed application of the authorities cited to the facts of this case is presented.

An account stated is simply a form of contract. "It is an agreement, between parties who have had previous transactions of a monetary character, that all items of accounts representing such transactions are true and that a balance struck is correct, together with a promise, express or implied, for payment of the balance." 1 Michigan Civil Jurisprudence (2001 revision) at 49 (citing Leonard Refiners v. Gregory, 295 Mich. 432 (1940). Plaintiff cites the same case for the proposition that the failure of a debtor to object within a reasonable time to monthly statements rendered constitutes an admission of the correctness of the account. Harness Dickey further relies upon Wilson v. White, 223 Mich.

18

497 (1923) for the proposition that a defendant's failure to object to accounts rendered until after suit is filed transforms them to accounts stated. Plaintiff argues that Andrews' failure to object to the invoices sent to him, or to otherwise object to the manner in which he was being represented, should estop him from challenging the correctness of the account as reflected in the December 12, 2003 accounts receivable statement.

In response, Defendant maintains that his account (number 5391) with Plaintiff was a collection of separate billing accounts, each with a six digit sub-account number corresponding to a particular invention or project. (Defendant's Brief, page 9; Defendant's Exhibits 13-15). Defendant observes that Plaintiff admitted in Exhibit C to the Complaint (Affidavit of account stated) that its services to Andrews were rendered on an open account basis. Andrews argues, and I agree, that Plaintiff has failed to state precisely when its open account became an account stated, or how the conversion occurred. Harness Dickey has also failed to identify the specific amount to which it alleges the Defendant agreed. In an Affidavit attached as Exhibit 2 to Defendant's Response to the Motion for Summary Judgment, Andrews avers that he never agreed to pay Plaintiff a specific sum of money claimed to be due from him to Plaintiff. He asserts that he never saw the December 12, 2003 "invoice" (accounts receivable statement) until he received the Complaint to which it was attached. Other evidence in the record appears to substantiate those assertions. Plaintiff's account receivable statement lists invoices by date and number. As to each invoice, it states an "original balance" from which "payments/adjustments" are deducted, yielding a "balance due." In each instance, however, those figures appear to reflect only charges and credits since the last billing. Nothing in Plaintiff's accounts receivable statement of December 12, 2003 reflects a running balance due on his entire account with

19

Harness Dickey.  Andrews' response to the Motion for Summary Judgment includes, as Exhibit 14, copies of several invoices dated January 19, 2001.  Three complete invoices, numbered 406271 through 406273, are attached.  None of those invoices reflects a statement of Andrews' total account balance with Harness Dickey.  There is simply no evidence in the record to contradict Andrews' assertion that he was not presented with a definitive statement of his total account balance with plaintiff until he received the December 12, 2003 statement attached to the Complaint in this case.  The Complaint was served upon Andrews on February 11, 2004, and he filed his Answer and Denial of Indebtedness on February 27, 2004 (Docket Entries 2-3).

As stated in an earlier section of this Report, the written memo signed by Andrews on February 28, 2001 contains no statement of the balance due on his account.  None of the Exhibits to Plaintiff's Motion for Summary Judgment reflects the communication by Plaintiff to Defendant of a specific account balance prior to the December 12, 2003 statement.  Indeed, there is reason to question whether Harness Dickey itself ever bothered to calculate a specific account balance prior to that time.  Plaintiff did attach, as Exhibits 3 and 4 to his Motion, copies of its correspondence to Defendant on August 16, 2002 and October 10, 2002.  Each letter described Plaintiff's account balance as "over $200,000.00."  My own calculations, based upon Exhibit A to the Complaint, however, indicate that the balance was less than $200,000.00 on each date.  Furthermore, as stated above, Plaintiff's statement of account balance includes no entry crediting Defendant with the $25,000.00 payment tended with his February 2001 memo.

Based upon the foregoing, there is a material question of fact as to whether Defendant Andrews was ever presented with a clear statement of his account balance prior

to the institution of this action.  In the absence of such a presentation, and an agreement as to the balance due, an account stated could not have come into existence.

### 4.   Defendant's Counterclaim for Over-Billing

Plaintiff's Motion also seeks summary judgment in its favor on Count II of Defendant's Amended Counterclaim, which alleges excessive fees and time charges. Defendant, of course, bears the burden of proof on the essential allegations of his claim. Plaintiff argues that the equitable doctrines of waiver, estoppel and laches should preclude Defendant from challenging the amount of its billings.  To the extent that the bills reflect the fair value of the services rendered, I agree.  I do not agree, however, that equity would compel Andrews to pay more than the fair value of the service, i.e., that he could be held to have acquiesced in being overcharged.  Such a result would unjustly enrich Plaintiff - a result that equity could not countenance.  Thus, it is incumbent upon Plaintiff to establish the fair value of its work, and the reasonableness of its billings in order to recover on its Complaint.  To recover on Count II of his Amended Counterclaim, Andrews must bear the burden of proving that he was charged more than Plaintiff's services were worth.  For the reasons stated in the foregoing analysis of the Plaintiff's claims, and for the additional reason that Defendant has not presented sufficient evidence as to the value of the legal services rendered to him by the Plaintiff, I conclude that issues of material fact remain for determination, and that summary judgment may not be granted.

### 5.   Defendant's Counterclaim for Malpractice

Plaintiff's Motion for Summary Judgment seeks the entry of a judgment in its favor on Count III of Defendant's Amended Counterclaim, which alleges  legal malpractice.

21

Defendant asserts that the Plaintiff, through Garrett C. Donley, intentionally notified its foreign counterpart firms which had rendered services in connection with international applications for Defendant's inventions under the Patent Cooperation Treaty, to cease work on his behalf.  Defendant alleges that the Plaintiff issued those instructions "without warning, notice or consent of any kind."  He further alleges that the direct and proximate result of Plaintiff's actions was his loss of "the value of approximately $175,000.00 paid for said World PCT applications, and an additional sum of approximately $125,000.00 in government fees, in addition to the loss in value of his portfolio without the benefit of World PCT protection."

The October 31, 2005 Affidavit of Garrett C. Donley (Docket Entry 82) asserts that Plaintiff's services to Defendant in connection with international patent protections was handled through its foreign "associates" or "affiliates" (patent attorneys or agents in other countries with whom Harness Dickey contracts to secure such services).  The Affidavit further declares that Plaintiff's foreign associate firms billed their services on behalf of Plaintiff's clients to Harness Dickey directly.  Plaintiff paid for those services upon receipt of each invoice, and then included the foreign associate's charges on its own invoices to Defendant.  The Affidavit further states that, "[b]ecause these foreign associate firms consider Harness Dickey ultimately responsible for payment, Harness Dickey must instruct those firms to terminate their work for a client whenever Harness Dickey has ceased representing that client."

Attached as Exhibit 5 to Plaintiff's Brief in Support of its Motion for Summary Judgment is an August 13, 2003 letter to Andrews.  The letter was signed by Christopher M. Brock on behalf of the Harness Dickey and Pierce, P.L.C. Executive Committee, and

22

informed Andrews that the firm was withdrawing its representation of Defendant and his patent portfolio, effective immediately.  Enclosed with the letter were five notices from the Patent Office relating to government maintenance taxes which had been paid.  Also enclosed was a copy of a sixth notice advising that one patent had been allowed to expire, for failure of payment of the required tax.  Mr. Brock requested Andrews' immediate advice as to where his files should be delivered.  Finally, Brock informed Andrews that it would be necessary for the firm to advise the U.S. Patent and Trademark Office and Harness Dickey's various foreign associate firms handling Andrews' patent matters regarding the withdrawal of representation.  Defendant was requested to provide a forwarding address for any future communications concerning his files.  Three weeks later, Garrett C. Donley, on behalf of Plaintiff, wrote a letter to each of Harness Dickey's foreign associate firms involved in the support of Andrews' patent portfolio in their respective countries.  Each letter advised the addressee that Harness Dickey had withdrawn its representation of Mr. Andrews due to ongoing account balance problems, and further that Andrews had not made any recent payments for services covering the invoices of the foreign firms.  The letter instructed each foreign associate that Harness Dickey would be providing no further instructions regarding Mr. Andrews' patent matters, and prevailed upon them not to perform any additional work or incur any charges on Mr. Andrews' files.  Each associate was directed to ". . . please allow all pending applications and/or issued patents to lapse."  Edward A. Andrews is named in each letter as a copy recipient.  (Exhibit 6 to Plaintiff's Brief in Support of Motion for Summary Judgment).  Defendant, however, denies receipt of the various letters.  (Andrews Deposition, pages 219-30).

23

In order to establish a claim for legal malpractice, a plaintiff must prove (1) the existence of an attorney/client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was the proximate cause of an injury; and (4) the fact and extent of the injury alleged. Charles Reinhart Co. v. Winiemco, 444 Mich 579, 585-86 (1994). Viewing the evidence in this record in the light most favorable to Plaintiff, I find that none of the elements is established.

The long term attorney/client relationship between Plaintiff and Defendant is well established. Also well established is the existence of a substantial disagreement as to the state of the account for services rendered by Plaintiff to Defendant. Harness Dickey has submitted a copy of its letter to Plaintiff, dated August 13, 2003, informing him of the termination of the attorney/client relationship. Crediting Andrews statement that he did not receive the letter, there is no evidence in the record that Plaintiff is in any way responsible for that failure. Andrews admits that the Michigan address to which the letter is directed is the only address provided to Plaintiff by him for purposes of correspondence. (Andrews Deposition, page 223). Andrews also denies receiving copies of Harness Dickey's letters to its foreign "associate" law firms directing them to take no further action on Andrews' behalf. Once again, however, he offers no evidence to suggest that the failure of communication was in any way attributable to Harness Dickey. Defendant acknowledges, and the record amply demonstrates, that Harness Dickey had communicated its dissatisfaction with the state of his fee account, and its disinclination to continue its representation of him without payment. (See, Exhibits 2 through 4 to Plaintiff's Brief). Communications on that subject had routinely been conducted by mail directed to Plaintiff's Michigan address.

24

Viewing the evidence in the light most favorable to the Defendant, I conclude that no rational jury could find in favor of Andrews on Count III of his Counterclaim.  Andrews could have had no reasonable expectation that Harness Dickey would continue to represent him without payment, or to subsidize his foreign patent portfolio by continuing to absorb the fees and costs generated by its foreign associates.  The record reflects that Plaintiff issued clear advanced notice, by reasonable means which had been utilized effectively in the past, that it would cease its efforts on Andrews' behalf and advise its foreign associates to do likewise.  Defendant was unquestionably aware of his own failure to make payment, and could have had no contrary expectation of the Plaintiff.

Andrews' criticism of the language used by Harness Dickey in its letters to foreign associates is of little moment.  Plaintiff accurately advised its associate entities that its representation of Defendant had ceased as a consequence of a fee account dispute.  Each foreign associate was instructed to take no further action on Andrews' portfolio.  As the foreign firms had theretofore looked to Harness Dickey for their payment, such an instruction was fully appropriate.  While I agree with Andrews' implication that the instruction to "allow all pending applications and/or issued patents to lapse" sounds unnecessarily vindictive, such language added nothing to the impact of the letters on the Defendant.  The lapse of Andrews' foreign patent rights was not directly within the foreign attorneys' powers.  It was simply the effect to be expected from the cessation of their work.

While he denies that he was formally represented by Mr. Nolan at the time Plaintiff withdrew its representation, Andrews admits that Nolan provided him with notice and advice regarding his foreign portfolio.  He further admits that he was able to maintain his European portfolio on a current basis following Harness Dickey's withdrawal, until he decided of his

25

own volition to allow his interests to lapse.  While other portions of his off-shore patent portfolio did lapse, I find no evidence that any negligent or improper act or omission on the part of Harness Dickey led to that result.  Nor has Plaintiff offered evidence (as opposed to allegation) that he suffered economic harm as a consequence.    Viewing the evidence in the light most favorable to Andrews, I find that no reasonable jury could return a verdict in his favor on his malpractice count.  Under such circumstances, there is no genuine issue for trial and summary judgment for Plaintiff is appropriate.

### 6.   Conclusion

The undisputed evidence in this case establishes that Plaintiff and Defendant maintained an attorney/client relationship for many years.  The evidence further indicates that Plaintiff rendered a great deal of service on Defendant's behalf.  It may well be that Mr. Andrews is properly indebted to Harness Dickey for the full amount prayed in the Complaint.  A Motion for Summary Judgment may be granted, however, only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In this case, it appears that Plaintiff rendered services to the Defendant in the absence of a specific agreement as to how its fees would be calculated.  Under such circumstances, the Plaintiff may recover the reasonable value of its work.  That value, however, is not established simply by the amount of Plaintiff's billing.  Nor is it established in the evidence presently on the record that Defendant has acceded to any particular amount by way of an account stated.  Accordingly, I find that the entry of summary judgment in favor of the Plaintiff for the amount claimed in the Complaint is not warranted on the current record.

26

For the same reasons, I find that Summary Judgment should be denied on Count II of Andrews' Amended Counterclaim. Therefore, I recommend that Plaintiff's Motion for Summary Judgment be denied on those claims. On Count III of the Amended Counterclaim, I find that no reasonable jury could find that Defendant is entitled to a verdict, and I recommend that Summary Judgment in favor of Plaintiff be granted.

## III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981), <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>Howard v. Secretary of HHS</u>, 932 F.2d 505 (6th Cir. 1991). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Smith v. Detroit Federation of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987), <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The

response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Donald A. Scheer
DONALD A. SCHEER
UNITED STATES MAGISTRATE JUDGE


DATED: September 18, 2006

_____

## CERTIFICATE OF SERVICE

I hereby certify on September 18, 2006 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on September 18, 2006.  **None.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge Donald A. Scheer
(313) 234-5217